CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED
6/25/2020
JULIA C. DUDLEY, CLERK
BY: s/ J. Vasquez
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| NELSON MENDES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 5:19-cv-00072 |
| ) | |
| DAVID BEAHM, *et al.*, ) | By: Elizabeth K. Dillon |
| ) | United States District Judge |
| Defendants. ) | |

**MEMORANDUM OPINION**

Plaintiff Nelson Mendes brought this action under 42 U.S.C § 1983 against defendants David Beahm, Matthew Wendling, Joseph Petty, and Taryn Logan, all in their individual and official capacities (the individual defendants). Mendes has also sued Warren County, Virginia, the Warren County Planning Department, Warren County Building Inspections Department, and the Warren County Board of Zoning Appeals (BZA). Mendes alleges several § 1983 violations stemming from zoning disputes involving Mendes's farming property. (Compl., Dkt. No. 1.)

Defendants move to dismiss Mendes's complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Def. Mot. Dismiss, Dkt. No. 5.) The court held a hearing on the motion to dismiss. (Dkt. No. 12.) For the reasons stated below, defendants' motion will be granted in part and denied in part.

I. BACKGROUND[1]

The individual defendants are employed as follows: David Beahm is the head Building Official for the Warren County Building Inspection Department (Building Department);

---

[1] The following factual background is taken from the allegations in Mendes's complaint, which are accepted as true for purposes of this motion.

Matthew Wendling is the Floodplain Manager for the Warren County Planning Department (Planning Department); Joseph Petty was the Zoning Administrator for the Planning Department until August 2019; and Taryn Logan is the Planning Director for the Planning Department. (Compl. ¶¶ 25–28.) Mendes names a variety of governmental entities in his complaint, but at the hearing, Mendes conceded that Warren County is the only suable entity. Also, Mendes sued Warren County and the individual defendants in their individual and official capacities, but Mendes failed to allege any specific "policy or custom" that would make Warren County subject to liability. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978) (holding that "a municipality is responsible under § 1983 only "when execution of a government's policy or custom . . . inflicts the injury"). At the hearing, Mendes represented that he was not alleging *Monell* liability against Warren County. Thus, Mendes's claims against Warren County and the above-named defendants in their official capacities will be dismissed. The court proceeds to analyze only the claims against the remaining defendants in their individual capacities.

In May 2017, Mendes purchased a waterfront property on the South Fork of the Shenandoah River with plans to open a tree nursery and eventually build a residence. In September 2017, Mendes hired contractors to clear the property of existing trees and other obstructions and erected a greenhouse himself. (Compl. ¶¶ 35–37.) A month later, the Building Department issued a "stop work order" and instructed Mendes to obtain a Land Disturbance Permit before proceeding. (*Id.* ¶ 38, 42.) When Mendes sought clarification from the Building Department and the Virginia Department of Environmental Quality (DEQ), a Building Department employee informed him that a neighbor reported seeing Mendes's contractors "remove vegetation along the river and toss it into the river," which prompted the DEQ to visit, inspect, and take pictures of the property. (*Id.* ¶ 47.) The neighbor later recanted her story and

admitted that she falsely reported Mendes "because she was upset by the clearing of trees near her land." (*Id.* ¶ 3.) Several months after his conversation with the Building Department, Mendes contacted two DEQ officials seeking a status update. These officials informed Mendes that DEQ's investigation revealed no compliance issues with the property. (*Id.* ¶¶ 45–46.) However, when Mendes subsequently contacted David Beahm at the Building Department to request the Permit, Beahm accused Mendes of violating several DEQ regulations, including failing to submit a full erosion and sediment control plan since his clearing project "exceeded 10,000 square feet per Warren County regulations." (*Id.* ¶ 50.) A third DEQ official overruled Beahm's position and confirmed that DEQ would take no further action against Mendes. (*Id.* ¶ 52.) Beahm eventually acquiesced to DEQ's decision, and Mendes continued with the project from March 2018 to January 2019 without incident. (*Id.* ¶ 53.)

On January 16, 2019, Mendes received a Notice of Violation from the Planning Department's Deputy Zoning Administrator citing Mendes for several Zoning Ordinance violations, including (1) failing to obtain a zoning permit for "any and all" structures on the property, (2) having "multiple accessory structures" on the property, and (3) having part of a six-by-sixteen-foot ramp protruding into the Shenandoah River in violation of Virginia Marine Resource Commission (MRC) regulations. (*Id.* ¶ 55.) The letter stated that the Planning Department had been conducting county-wide observations of properties along Warren County's Special Flood Hazard Area (SFHA) following a record rainfall in 2018. (*Id.*) Mendes contacted Petty at the Planning Department and expressed concern that Beahm encouraged an investigation into Mendes's property "given their prior history." (*Id.* ¶ 59.)

On February 8, 2019, several members of the Planning and Building Departments—including Petty and Beahm—visited the property at Mendes's request. Although it was

Mendes's understanding that he was exempt from the zoning permit requirement pursuant to a January 21, 2005 Zoning Ordinance Interpretation regarding agricultural properties, Petty instructed Mendes to submit an agricultural exemption zoning application. (*Id.* ¶ 63–64.) On February 21, 2019, Petty informed Mendes that all structures on the property would need to be inspected for compliance with National Flood Insurance Program (NFIP) and Federal Emergency Management Administration (FEMA) standards. (*Id.* ¶ 67.) On March 13, 2019, Petty advised Mendes to obtain a residential building permit for the deck. (*Id.* ¶ 69.) Following a March 28, 2019 FEMA site visit, Mendes installed FEMA-compliant flood vents on the property and submitted applications for agricultural exemptions for the deck, greenhouse, and two metal garages. (*Id.* ¶¶ 72, 77–78.)

On May 1, 2019, Mendes received a "Zoning Determination" from the Planning Department requiring Mendes to obtain residential building permits for all structures within the flood plain area, including the deck, greenhouse, and garages to support his agricultural exemption application. (*Id.* ¶ 80.) Mendes timely filed a notice of appeal to the BZA. (*Id.* ¶ 81.)[2] At the August 1, 2019 BZA hearing, Mendes presented evidence that the Planning Department "selectively enforced, and otherwise interpreted the Zoning Ordinance against him arbitrarily and capriciously." (*Id.* ¶ 88.) Mendes also accused Planning Department officials of trespassing on the property because that was "the only way the Planning Department could have known certain facts about the Farm.". (*Id.* ¶ 87.)

The BZA took the matter under advisement and scheduled a second hearing for September 5, 2019. (*Id.* ¶ 89.) On August 29, 2019, the Planning Department prepared a

---

[2] Mendes took the position that he was only required to install flood vents on each garage, which he had done prior to the May 1, 2019 Zoning Determination. (Compl. ¶ 83.) Filing for residential building permits to support his agricultural exemption application "defeated the purpose for requesting an exemption." (*Id.* ¶ 86.)

4

supplemental staff report raising two new issues concerning Mendes's compliance with the Zoning Ordinance: "(1) that the property was not used for agricultural purposes because [Mendes] and his family occasionally camped in the garage; and (2) that there were concerns about [a] composting toilet, shower . . . and sink in one of the garages." (*Id.* ¶ 92.)  The Planning Department allegedly referred the second matter to the Virginia Department of Health for review.  (*Id.*)

On the morning of the second BZA hearing, Petty informed Mendes that the Planning Department intended to present a second supplemental memorandum to the BZA conceding that Mendes's legal interpretation of the Zoning Ordinance was correct, but requiring him to pay a ten dollar ($10.00) zoning permit fee for the deck "because it would not otherwise meet the agricultural exemption."  (*Id.* ¶ 95.)  Mendes rejected this proposal because it "failed to recognize that Mendes fully complied" with the Zoning Ordinance.  (*Id.* ¶ 96.)  Following its second hearing, the BZA overturned the Zoning Administrator's May 1, 2019 Zoning Determination and required Mendes to comply with the Planning Department's recommendation to pay a $10.00 permit fee.  (*Id.* ¶ 103.)

## II.  DISCUSSION

### A.  Standard of Review

To survive a motion to dismiss, the complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible if the plaintiff pleads factual content that allows the court to draw a "reasonable inference that the defendant is liable for the alleged misconduct." *Iqbal*, 556 U.S. at 678.  In determining whether Mendes has satisfied this plausibility standard, the court must accept as true all well-pleaded facts in the complaint and

"draw[] all reasonable factual inferences from those facts in [Mendes's] favor," *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999), but it need not "accept the legal conclusions drawn from the facts" or "accept as true facts or unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). "Threadbare recitals" of the elements of each cause of action will not suffice. *Iqbal*, 556 U.S. at 678. The complaint must allege enough facts from which the court, calling upon "its judicial experience and common sense," *id.* at 679, can conclude that Mendes is entitled to relief.

**B. Mendes's Complaint**

Mendes alleges that the defendants (1) violated his due process right to be free from "arbitrary and capricious government action," (2) violated his right to equal protection from "being unjustly singled out," (3) violated the Fourth Amendment by conducting "unlawful and obtrusive governmental searches," and (4) conspired to infringe on his Fourth Amendment property rights. (*See* Compl. ¶¶ 1, 133–78.) In addition, Mendes requests that this court exercise its supplemental jurisdiction to review and overturn the BZA's September 5, 2019 decision. (Compl. ¶¶ 179–81.)[3] The court addresses each count below.

**1. Due process**

Mendes alleges that defendants "deprived [him] of his property rights" by subjecting him to "unnecessarily aggressive, and ultimately frivolous Planning Department enforcement action, and for which [he] is currently required to comply with terms of a BZA determination adopted from a recommendation by the Planning Department at the last minute provided to the BZA." (Compl. ¶ 136.) Mendes brings procedural and substantive due process claims.

---

[3] The court is unsure whether to characterize this count as a claim or a request for relief but will consider it as Count V for purposes of this motion to dismiss.

### a. Procedural due process claim

To establish a procedural due process claim, Mendes must show (1) that he had a protected property interest; (2) of which defendant deprived him; (3) without due process of law. *Tri Cty. Paving, Inc. v. Ashe Cty.*, 281 F.3d 430, 436 (4th Cir. 2002) (citing *Sylvia Dev. Corp. v. Calvert Cty.*, 48 F.3d 810, 826 (4th Cir. 1995)).  Mendes alleges that the Planning Department denied him "minimal procedural due protections" by "constantly changing [its] basis for alleged zoning violations" and issuing conflicting interpretations regarding whether Mendes was required to obtain a Permit.  (*See id.* ¶ 138.)  Mendes also accuses the BZA of (1) refusing to hear newly discovered evidence at the second BZA hearing, (2) failing to address or investigate his factual or legal arguments, (3) adopting the Planning Department's "last-minute memorandum" as the basis for overturning and substituting the Zoning Administrator's May 1, 2019 Zoning Determination, (4) refusing to allow witness testimony on his behalf at the second BZA hearing, (5) demonstrating partiality when questioning the Planning Department at the second BZA hearing, (6) holding off-the-record deliberations during a public hearing, and (7) issuing a decision ordering Mendes to take repetitive action despite the BZA's previous knowledge of his full compliance with all requests.  (*Id.* ¶ 139.)

As an initial matter, Mendes has been unable to identify a property interest that was abridged by the actions of the defendants.  At the hearing, Mendes conceded that there was no such deprivation.  This concession, standing alone, is fatal to his procedural due process claim. *See Greenspring Racquet Club, Inc. v. Baltimore Cty., Md.*, Nos. 99-2444, 00-1012, 2000 WL 1624496, at *7 (4th Cir. Oct. 31, 2000) (unpublished opinion) ("If no protected interest exists, there is no need to consider whether any alleged deprivation of that interest was effected with 'due process.'") (quoting *Scott v. Greenvile Cty.*, 716 F.2d 1409, 1418 (4th Cir. 1983)).

Moreover, Mendes cannot state a claim for procedural due process because he failed to take advantage of the available process in state court. "[N]o § 1983 procedural due process violation exists when a party fails to exhaust both administrative and state court remedies that the government affords to them." *Rockville Cars, LLC v. City of Rockville, Md.*, 891 F.3d 141, 149 (4th Cir. 2018); *cf. Mora v. City of Gaithersburg, Md.*, 519 F.3d 216, 230 (4th Cir. 2008) ("[T]he constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process.") (quoting *Zinermon v. Burch*, 494 U.S. 113, 125–26 (1990)). Mendes had the opportunity to appeal the BZA's September 5, 2019 ruling within 30 days pursuant to § 15.2-2314 of the Virginia Code.[4] *See Bragg Hill Corp. v. City of Fredericksburg*, 831 S.E.2d 483, 492 (Va. 2019) (explaining the 30-day appeals process following a zoning appeal board's final decision). Mendes's failure to file an appeal in accordance with § 15.2-2314 bars his procedural due process claim. *See id.* (concluding that "the determination of the zoning administrator affirmed by the BZA . . . became a 'thing decided'" after no appeal from the BZA decision was filed under § 15.2-2314) (quoting *Lilly v. Caroline Cty.*, 526 S.E.2d 743, 745 (Va. 2000)).

Accordingly, Mendes's procedural due process claim will be dismissed.

### b. Substantive due process claim

To establish a substantive due process claim, Mendes must show that (1) he had property or a property interest; (2) the state deprived him of this property or property interest; and (3) "the state's action f[ell] so far beyond the outer limits of legitimate governmental action that no

---

[4] "Any person . . . aggrieved by any decision of the board of zoning appeals, . . . may file with the clerk of the circuit court for the county or city a petition . . . specifying the ground on which aggrieved within 30 days after the final decision of the board." Va. Code. Ann. § 15.2-2314. It appears that Mendes was aware of his obligation to either comply with or appeal the BZA's decision pursuant to § 15.2-2314. (*See* Compl. ¶¶ 104–05.)

process could cure the deficiency." *MLC Auto., LLC v. Town of So. Pines*, 532 F.3d 269, 281 (4th Cir. 2008) (quoting *Sylvia Dev. Corp. v. Calvert Cty.*, 48 F.3d 810, 827 (4th Cir. 1995)). Only "the most egregious official conduct" that "shocks the conscious" creates a substantive due process violation. *Wolf v. Fauquier Cty. Bd. of Supervisors*, 555 F.3d 311, 323 (4th Cir. 2009) (citing *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 836 (1998)).

Mendes alleges that defendants deprived him of "substantive due process protections from arbitrary and capricious government action both in terms of the Planning Department's interpretation of the Warren County Zoning Ordinance and its procedures for enforcing such regulations." (Compl. ¶ 140.) Specifically, Mendes claims that defendants "singled" him out, constantly changed positions on a number of alleged zoning violations, aggressively pursued these accusations in bad faith, and failed to "maintain policies and procedures" ensuring that the Planning Department enforced the Zoning Ordinance impartially. (*Id.*)

Once again, Mendes's concession about the lack of the deprivation of a protected property interest, discussed above, is fatal to this claim. *See, e.g.*, *M.B. by and through Brown v. McGee*, Civil Action No. 3:16cv334, 2017 WL 1364214, at *7 n.10 (E.D. Va. Mar. 24, 2017) (explaining that while a student has a property interest in public education, when a student "alleges no suspension, expulsion, or exclusion from the state-mandated secondary school process, no deprivation of a protected property interest has occurred") (citing *Goss v. Lopez*, 419 U.S. 565, 576 (1975)); *Walsh v. Logothetis*, Civil No. 3:13CV401-JAG, 2014 WL 229588, at *6 (E.D. Va. Jan. 21, 2014) (stating that a public employee's property interest is "generally in continued employment, and no deprivation exists so long as the employee receives payment of the full compensation due under the contract") (citing *Fields v. Durham*, 909 F.2d 94, 98 (4th

Cir. 1990)); *Coates v. Hall*, 512 F. Supp. 2d 770, 778 (W.D. Tex. 2007) ("[T]here has been no deprivation of substantive due process because there has been no deprivation of property.").

Additionally, even if Mendes's allegations are true, Mendes cannot state a substantive due process claim because the process in this case cured the deficiency. Government action offends due process "only where the resulting deprivation . . . is so unjust that no amount of fair procedure can rectify it." *Front Royal and Warren Cty. Indus. Park Corp. v. Town of Front Royal, Va.*, 135 F.3d 275, 288 (4th Cir. 1998). At Mendes's first hearing, the BZA postponed resolution and "tasked the Planning Department to propose a solution" to Mendes. (Compl. ¶ 89.) The BZA then held a second hearing to examine the Planning Department's September 5, 2019 proposal, which conceded that Mendes's legal interpretation of the Zoning Ordinance was correct. (*Id.* ¶ 95.) After deliberation, the BZA adopted the proposal, overturned the Zoning Administrator's May 1, 2019 Zoning Determination, and imposed a $10.00 zoning permit fee in accordance with the proposal to bring the property into compliance. (*Id.* ¶¶ 95, 103, 127.) Through these procedures, the BZA agreed with Mendes's position and exempted him from most permit requirements. Its decision to assess a $10.00 fee is not the "conscious-shocking" behavior required to create a substantive due process violation. *See, e.g.*, *Lewis*, 523 U.S. at 846 ("Only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'") (quoting *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 116 (1992)).

For these reasons, Mendes's substantive due process claim will be dismissed.

### 2. Class-of-one equal protection claim

Mendes alleges that he "was injured as a 'class of one' by the arbitrary and capricious actions taken by the staff members of the Planning and Building Departments." (Compl. ¶ 145.) To support this claim, Mendes alleges:

110. The Building Department noted in the [Freedom of Information Act or FOIA] response that no building permits were issued for any structures located within the SFHA [Special Flood Hazard Area] for the period of time requested.

111. Additionally, Plaintiff received and reviewed several other agricultural exemption applications within the FOIA response[,] none of which required the submission of a residential building permit, and all were non-commercial in nature such as Plaintiff's.

112. The response made clear that of the hundreds of miles of waterfront properties totaling more than two thousand six hundred (2,600+) distinct lots within Warren County, only the Plaintiff was cited, inspected, sent letters of inquiry, or otherwise contacted for violations of the [Z]oning [O]rdinance or building code.

. . .

114. . . . [F]rom October 2018 through May 29, 2019, Plaintiff was the *only* property owner in all of Warren County within the SFHA contacted by the Planning Department in *any* way regarding notices of violation, letters of inquiry, or any form of communication relating to potential zoning non-compliance issues.

115. After Plaintiff raised his concerns about selective enforcement to the Planning Department and after his first FOIA request, for the first time in more than at least six months on May 29, 2019, the Planning Department issued 'notices of zoning inspection' to several property owners within the SFHA.

116. The Planning Department's approach to subsequent property owners was vastly different than how the Planning Department addressed Plaintiff's property . . . . Plaintiff received no notice of zoning inspection; no notice of follow-up and determination; no phone calls; was threatened to bring his property into compliance within thirty days or tear down his structures; and never received any guidance proactively from the Planning Department to bring his property into compliance . . . .

147. Being the only property owner singled out when there were hundreds of miles of riverfront properties within Warren County's boundaries, and when the Planning Department was conducting a county-wide aerial surveillance review of riverfront properties for potential violations defies rational explanation and reasonably anticipated enforcement results.

> 148. Further, Plaintiff discovered via FOIA requests that at least two other similarly situated property owners during the period of October 1, 2018 through May 29, 2019 within Warren County were not cited or otherwise contacted by the Planning Department regarding apparent violations that were clearly observable and should have been equally discoverable had the Planning Department conducted the alleged county-wide review as was represented.
>
> 149. The Planning Department's decision to enforce the Warren County Zoning Ordinance only against Plaintiff lacked any rational basis [for] difference in treatment.

(*Id.* ¶¶ 110–12, 114–16, 147–49.)

Mendes may state a successful class-of-one equal protection claim if he can allege that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam). In *Olech*, the Court construed the complaint as "alleging that the Village intentionally demanded a 33-foot easement as a condition connecting her property to the municipal water supply where the Village required only a 15-foot easement from other similarly situated property owners." *Id.* at 565. Further, the village's demand was "irrational and arbitrary" because the village successfully connected her property "after receiving a clearly adequate 15-foot easement." *Id.* The Court held that the plaintiff's complaint was "sufficient to state a claim of relief under traditional equal protection analysis." *Id.*

Mendes's claim is similar to the claim in *Olech*. Consequently, Mendes has likely pleaded enough facts to state a class-of-one equal protection claim under the applicable pleading standards when *Olech* was decided. However, the court must examine the complaint under the stricter pleading requirements developed by *Twombly* and *Iqbal*.

The Fourth Circuit "has not had occasion to provide a clear standard as to how concretely and specifically a plaintiff must compare himself to others to state a class-of-one claim." *Foster*

*v. United States EPA*, No. 2:14-cv-16744, 2016 WL 4473453, at *8 (S.D. W. Va. Aug. 22, 2016).[5] In *Foster*, the court observed that "most other courts of appeals directly confronting the pleading standard for a class-of-one claim—particularly those addressing it after [*Twombly* and *Iqbal*]—apparently require plaintiffs to name specific parties or to assert facts at the motion-to-dismiss stage showing that there is a reasonably close similarity between those parties and the plaintiffs." *Id.* (collecting cases).

For example, the First Circuit concluded that class-of-one claims in the land-use context "mean[] more than 'point[ing] to nearby parcels in a vacuum and leav[ing] it to the municipality to disprove conclusory allegations that the owners of those parcels are similarly situated.'" *Freeman v. Town of Hudson*, 714 F.3d 29, 38 (1st Cir. 2013) (citations omitted) (alterations in original). Similarly, the Tenth Circuit held that "after *Twombly* and *Iqbal*, it is insufficient to simply allege that other, unidentified properties have 'comparable' or 'similar' conditions—the claim must be supported by specific facts plausibly suggesting the conditions on the properties and the properties themselves are similar in all material respects." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1220 (10th Cir. 2011). And the Second Circuit has found, "in light of *Iqbal*, a generalized pleading in the mold of *Olech* is no longer sufficient to state a class-of-one claim." *Id.* at 1219 (citing *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55 (2d Cir. 2010)).

Mendes does not allege that property owners within the Special Flood Hazard Area between October 2018 and May 2019 had alleged violations of the type and degree that Mendes had, nor does he allege that all Zoning Ordinance violations require the same level of County

---

[5] In *Ruttenberg v. Jones*, 283 F. App'x 121 (4th Cir. 2008), decided after *Twombly*, the Fourth Circuit upheld the district court's dismissal of a class-of-one claim where the complaint "fail[ed] to allege the existence of similarly situated individuals" and "fail[ed] to allege that the disparate treatment lacked a rational basis." *Id.* at 131. Mendes alleged both in the instant case. (*See* Compl. ¶¶ 148–49.)

involvement. Further, Mendes does not allege that the two similarly situated properties referenced in the complaint were even located within the Special Flood Hazard Area and subject to the same land use and zoning requirements. (*See* Compl. ¶ 148 ("[A]t least two other similarly situated property owners during the period of October 1, 2018 through May 29, 2019 *within Warren County* were not cited or otherwise contacted by the Planning Department regarding apparent violations.") (emphasis added).) Mendes cannot rely on these "broad generalities in identifying a comparator." *Leib v. Hillsborough Cty. Public Transp. Comm'n*, 558 F.3d 1301, 1307 (11th Cir. 2009) (emphasizing that the "similarly situated" requirement "must be rigorously applied in the context of 'class of one' claims"). Accordingly, Mendes has failed to plead specific facts "plausibly suggesting the conditions on the properties and the properties themselves are similar in all material respects." *Kansas Penn Gaming*, 656 F.3d at 1220.

For these reasons, the court will dismiss Mendes's equal protection claim.

### 3. Fourth Amendment

"The Fourth Amendment protects 'the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'" *Dist. of Columbia v. Wesby*, 138 S. Ct. 577, 585 (2018) (quoting U.S. Const. amend. IV). A "search" for purposes of the Fourth Amendment may occur when the government intrudes upon a person's "reasonable expectation of privacy." *Katz v. United States*, 389 U.S. 347, 357 (1967). A search may also occur when the government intrudes or trespasses upon a constitutionally protected area for the purposes of obtaining information. *See Asbury v. Ritchie Cnty. Comm'n*, Civil Action No. 1:16CV132, 2018 WL 445110, at *5 (N.D. W. Va. Jan. 16, 2018) (citing *United States v. Jones*, 565 U.S. 400, 408 n.5 (2012)).

Mendes alleges that his Fourth Amendment rights were violated when Wendling, the County Planning Department's Floodplain Manager, trespassed on Mendes's property looking for evidence of potential zoning violations without his consent. To support this claim, Mendes alleges:

> 157. The ramp on Plaintiff's Farm cannot be seen by the naked eye or even with the assistance of optical enhancing equipment (i.e. binoculars or similar devices) from the public right-of-way, and can only be seen by physically entering onto the property several hundred feet.
>
> . . .
>
> 161. Matt Wendling acknowledged in e-mail communications[6] . . . that he entered onto Plaintiff's Farm without Plaintiff's consent or knowledge.
>
> 162. Matt Wendling entered the Plaintiff's Farm without legal basis, nor did he believe that he had such a right to enter the Farm as his [e-mail] communications . . . reflect that he was unaware of any legal authority granting him the right to access Plaintiff's property.
>
> . . .
>
> 165. The underlying notice of violation and subsequent enforcement efforts by the Planning Department were generated as a result of an illegal search conducted by Matt Wendling.

(*Id.* ¶¶ 157, 161–62, 165.)

Defendants argue that qualified immunity bars Mendes's Fourth Amendment claim against Wendling because Wendling's presence on the property was authorized by state law. Section 62.1-44.15:54 of the Virginia Code requires all localities to establish and administer a Virginia Erosion and Sediment Control Program (VESCP). These entities review and determine the "adequacy of erosion and sediment control plans submitted for land-disturbing activities" on

---

[6] Mendes obtained e-mail correspondence between Matt Wendling and various Warren County officials in response to FOIA requests.

public and private lands and "monitor[], report[], inspect[], and enforce[] . . . such land-disturbing activities." Va. Code Ann. § 62.1-44.15:54(B).  Further, a VESCP locality or any duly authorized agent thereof is authorized by statute to enter any public or private property "for the purpose of obtaining information or conducting surveys or investigations necessary" to enforce the program, provided that the entry is "at [a] reasonable time[] and under reasonable circumstances." Va. Code Ann. § 62.1-44.15:60.  Thus, defendants argue that Wendling was legally justified in visiting the property to survey, inspect, and investigate Mendes's land-disturbing activities pursuant to Virginia statute, and as a result, Mendes's Fourth Amendment right was not so "clearly established . . . that a reasonable official would understand that what he is doing violates that right." *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 313 (4th Cir. 2006) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)).

Government officials conducting a search are entitled to qualified immunity where "clearly established law does not show that the search violated the Fourth Amendment." *Pearson v. Callahan*, 555 U.S. 223, 243–44 (2009).  Defendants' argument, however, fails to consider the Fourth Amendment implications when the government intrudes upon a constitutionally protected area seeking information.  Moreover, there is an entire body of Fourth Amendment jurisprudence regarding administrative searches and inspections. *See, e.g.*, *New York v. Burger*, 482 U.S. 691, 702–03 (1987).  Under this line of cases, a broad administrative search will not violate the Fourth Amendment where (1) there is a "substantial" government interest that informs the regulatory scheme pursuant to which the inspection is made; (2) the warrantless inspection is necessary to further the regulatory scheme; and (3) the statute's inspection program, in terms of the certainty and regularity of its application, provides a constitutionally adequate substitute for a warrant. *Id.*; *see MJJG Rest., LLC v. Horry Cty., S.C.*,

11 F. Supp. 3d 541, 567 (D.S.C. 2014) (applying administrative search doctrine to enforcement of zoning ordinance). Because the defendants did not frame their qualified immunity argument in terms of these concepts, the court is unable to discern whether Wendling is entitled to qualified immunity at this time. *See Sales v. Grant*, 224 F.3d 293, 296 (4th Cir. 2000) ("It is well-settled that qualified immunity is an affirmative defense, and that the burden of pleading it rests with the defendant.").

Therefore, defendants' motion to dismiss Mendes' Fourth Amendment claim against Wendling will be denied.

### 4. Civil Conspiracy

To establish a civil conspiracy claim actionable under § 1983, a plaintiff must demonstrate that the defendants "acted jointly in concert and that some overt act was done in furtherance of the conspiracy," resulting in the deprivation of a federal right. *Glassman v. Arlington Cnty., Va.*, 628 F.3d 140, 150 (4th Cir. 2010) (quoting *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996)). A plaintiff must make specific allegations that reasonably lead to the inferences that members of the alleged conspiracy shared the same conspiratorial objective to try to "accomplish a common and unlawful plan" to violate the plaintiff's federal rights. *Hinkle*, 81 F.3d at 421.

Mendes alleges that staff members of the Planning Department and/or Building Department conspired to infringe upon his property rights. (Compl. ¶ 174.) Further, Mendes believes that other members of the Planning Department—namely Joseph Petty and Taryn Logan—conspired to hide Wendling's misconduct by covering up the trespass and choosing "not to take any action to investigate and address the matter." (*Id.* ¶ 176.) However, it is not sufficient to plead facts "upon information and belief," (*id.* ¶¶ 175–76), as Mendes has done in

this case. Instead, to "avoid evisceration of the purposes of qualified immunity, courts have required that plaintiffs alleging unlawful intent in conspiracy claims under . . . § 1983 plead specific facts in a nonconclusory fashion to survive a motion to dismiss." *Simmons v. Poe*, 47 F.3d 1370, 1377 (4th Cir. 1995).

Further, Mendes's conspiracy claim, as pled, is barred by the intracorporate conspiracy doctrine, which holds that "acts of corporate agents are acts of the corporation itself, and corporate employees cannot conspire with each other or with the corporation." *ePlus Tech, Inc. v. Aboud*, 313 F.3d 166, 179 (4th Cir. 2002). The doctrine applies to public entities, as well as private corporations and public government entities. *Wei-ping Zeng v. Marshall Univ.*, 370 F. Supp. 3d 682, 687 (S.D. W. Va. 2019) (citing *Dickerson v. Alachua Cty. Comm'n*, 200 F.3d 761, 767 (11th Cir. 2000)). Mendes argues that the doctrine does not apply to "unauthorized" corporate actions, but he fails to sufficiently plead any actions that were not authorized by Warren County.

For these reasons, the court concludes that Mendes has not pled an actionable § 1983 conspiracy claim.

### 5. Review of the BZA's decision

Mendes requests that this court exercise its supplemental jurisdiction to review the Warren County BZA's September 5, 2019 decision "as the state [c]ircuit [c]ourt would have been capable of performing pursuant to Va. Code § 15.2-2314." (Compl. ¶ 180.) The court has no authority to take the requested action. There is nothing in the language of the statute or in any applicable case law granting federal courts the authority to usurp a state court's authority to sit in review of a local zoning board of appeals. *See, e.g.*, *Nat'l Maritime Union of Am., AFL-CIO v. City of New York*, 119 S.E.2d 307, 309 (Va. 1961) (explaining that the action disputing the

constitutionality of a City of Norfolk zoning ordinance was first filed in the Eastern District of Virginia and stayed on motion by the defendants "to afford complainants an opportunity to proceed in the [s]tate courts of this [C]ommonwealth"). Section 15.2-2314 explicitly delineates the process by which Mendes could have appealed the BZA's decision. Mendes chose not to do so.

Even if § 15.2-2314 somehow gave this court authority to review the BZA's decision, it would decline to do so under the *Burford* abstention doctrine. *See Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). When a federal court has jurisdiction over an action, the court "may, in its sound discretion," refuse to exercise its jurisdiction in "proper regard for the rightful independence of state governments in carrying out their domestic policy." *Burford*, 319 U.S. at 317–18. The Fourth Circuit classifies cases involving questions of state and local land use and zoning law as "a classic example of situations in which 'the exercise of federal review . . . would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Pomponio v. Fauquier Cty. Bd. of Supervisors*, 21 F.3d 1319, 1327 (4th Cir. 1994), *overruled in part on other grounds by Quackenbush v. Allstate Ins.*, 517 U.S. 706 (1996) (quoting *New Orleans Public Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 361 (1989)). Indeed, the Fourth Circuit has, on numerous occasions, "reiterated that state and local zoning and land use law is particularly the province of the State and that federal courts should be wary of intervening in that area in the ordinary case." *Pomponio*, 21 F.3d at 1327; *Browning-Ferris, Inc. v. Baltimore Cty.*, 774 F.2d 77, 79 (4th Cir. 1985) (applying *Burford* abstention and deeming land use questions "the peculiar concern of local and state governments"); *Caleb Stowe Assocs., Ltd. v. Albemarle Cty.*, 724 F.2d 1079, 1080 (4th Cir. 1984) (abstaining from deciding a case where plaintiffs' state and federal claims "necessarily depend upon the construction of state land

use law"). Thus, "absent unusual circumstances, a district court should abstain under the *Burford* doctrine from exercising its jurisdiction in cases arising solely out of state or local zoning or land use law, despite attempts to disguise the issues as federal claims." *Pomponio*, 21 F.3d at 1327.

There are no facts in Mendes's complaint to suggest that this is anything but an "ordinary case" with respect to his request for review of the BZA's decision. For these reasons, the court will abstain from exercising its jurisdiction with respect to Count V.[7]

### III.  CONCLUSION

For the above-stated reasons, defendants' motion to dismiss (Dkt. No. 5) will be granted as to all claims and all defendants except plaintiff's Fourth Amendment claim against defendant Matthew Wendling. The court will enter an appropriate order.

Entered: June 25, 2020.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge

---

[7] The court recognizes that, pursuant to the *Burford* abstention doctrine, the typical procedure is to dismiss the claims for equitable relief and stay the damages claims. A stay of the remaining damages claim—Mendes's Fourth Amendment claim against Wendling—would serve no purpose because the state court process has concluded. *See Quackenbush*, 517 U.S. at 730–31 (stating that "*Burford* might support a federal court's decision to postpone adjudication of a damages action pending the resolution by the state courts of a disputed question of state law").