CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

7/15/2020

JULIA C. DUDLEY, CLERK
BY: s/ J. Vasquez

DEPUTY CLERK

## IN THE UNITED STATE DISTRICT COURT
## IN THE WESTERN DISTRICT OF VIRGINIA
### Harrisonburg Division

NELSON MENDES,

                Plaintiff,

  - against -

MATTHEW WENDLING, JOSEPH PETTY,
TARYN LOGAN and WARREN COUNTY
(Virginia),
                Defendants.

Case No.: 5:19-cv-00072-EKD

**FIRST AMENDED COMPLAINT**

JURY DEMAND REQUESTED

Plaintiff, NELSON MENDES, by counsel, for his Complaint against Defendants, MATTHEW WENDLING, in his individual capacity, JOSEPH PETTY, in his individual capacity, TARYN LOGAN, in her individual capacity, and WARREN COUNTY (Virginia), states as follows:

### SUMMARY OF THE ACTION

1)     Plaintiff Nelson Mendes brings this action based on 42 U.S.C. § 1983 against the named Defendants who violated his Constitutional rights under the Fourth Amendment (against unlawful and intrusive governmental searches), and under the Equal Protection Clause of the Fourteenth Amendment (afforded protections from being unjustly 'singled' out).

2)     This case stems from Warren County Planning Department Floodplain Manager, Matthew Wendling, illegally searching Mr. Mendes's farm, as the *only* proactive investigation and enforcement of the Warren County Zoning Ordinance conducted by the Planning Department within six months.

3)     The information illegally obtained from Defendant Wendling's search was then presented to Planning Department official, Joseph Petty, for enforcement, which resulted in Plaintiff being the *only* Special Flood Hazard Area property targeted with several notices of violation, numerous

on-site inspections, and no reasonably proposed offers of resolution despite numerous requests by the Plaintiff.[1] Rather than acknowledge that Plaintiff's property was the only property proactively targeted whether maliciously or by sheer coincidence, the Planning Department lied to him multiple times throughout the underlying events.

4)      Of the 2,600+ properties located within the Special Flood Hazard Area of Warren County, only Mr. Mendes's property was ever proactively investigated and enforced against by the Warren County Planning Department from October 1, 2018 until on or about May 28, 2019. Only after Plaintiff complained about selective targeting and enforcement did the Planning Department enforce the Zoning Ordinance against anyone else. The process applied to other property owners with similar zoning matters as Mr. Mendes was lenient and helpful, whereas Mr. Mendes experienced an *ad hoc* vexatious abuse of zoning process and disregard for his property rights.

## JURISDICTION AND VENUE

5)      This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, the Fourth Amendment (as applied through the Fourteenth Amendment), the Fourteenth Amendment of the United States, and pursuant to the Commonwealth of Virginia's laws.

6)      The incidents underlying this Complaint occurred within Warren County, Virginia, and the defendants maintain offices within said jurisdiction.

---

[1] The BZA proceedings include much of the underlying information presented, and were recorded, courtesy of the Royal Examiner, and are available for review at the following links: https://youtu.be/zu1g10yC-jY [first BZA hearing]; and https://www.youtube.com/watch?v=6LeAxp27DLc [second BZA hearing].

## PARTIES

7)      Plaintiff, NELSON MENDES, is a citizen and resident of the Commonwealth of Virginia, Arlington County. He owns the subject property, a 6.67-acre agriculturally zoned, South Fork of Shenandoah River waterfront property, within unincorporated Warren County located at postal address 1007 Stoney Bottom Road, Front Royal, Virginia 22630 (the "Farm").

8)      Defendant, MATTHEW WENDLING, is the Floodplain Manager for the Warren County Planning Department. He is being sued in his individual capacity.

9)      Defendant, JOSEPH PETTY, is the Zoning Administrator (Deputy Zoning Administrator until August 2019) for the Warren County Planning Department. He is being sued in his individual capacity.

10)     Defendant, TARYN LOGAN, is the Planning Director for the Warren County Planning Department. She is being sued in her individual capacity.

11)     Defendant, WARREN COUNTY, is the county government ultimately responsible for the Warren County Building Inspections Department and Warren County Planning Department, and each of those agencies' respective staff members and agents.

12)     For reference, the Warren County Building Inspections/Permits Department, is an agency of the County that is responsible for enforcing the Virginia Statewide Building Code' and 'Erosion and Sediment Control Handbook'.

13)     For reference, the Warren County Planning Department is an agency of the County that is responsible for enforcing the Warren County Zoning Ordinance.

## FACTUAL BACKGROUND

I.     *Preliminary Background.*

14)     Prior to Mr. Mendes's acquisition of the Farm, the prior owner, Ms. Susan Dujack, spoke with Defendant Wendling about what would be required to comply with the Warren County Zoning Ordinance if she were to build a structure by the river's edge.  She was told that no permits would be required nor advised of any other requirements such as possible flood-proofing measures.

15)     Prior to sale, Ms. Dujack had constructed two metal garage structures. She also had a sixteen by sixteen-foot deck built along the riverfront that Mr. Mendes built.

16)     In May 2017, Mr. Mendes purchased the Farm from Ms. Dujack. He also organized Isabelas Blooms, LLC, the company he planned to operate the Farm under.

17)     By September 2017, Mr. Mendes hired a licensed environmental contractor to clear his property of trees and other obstructions. Within weeks, the project was completed, and grass seed and straw were applied to the entire property. Plaintiff also installed a sea wall to prevent erosion along the Shenandoah River's bank.

18)     In September 2017, Mr. Mendes erected a forty-eight foot by twenty-foot hoophouse constructed primarily of PVC pipe and wood. It was securely anchored by fifty-six posts and four concrete piers. The bottom four feet of the hoophouse uses a wire mesh that would readily permit water to flow through in the event of flooding. It is covered by a removable plastic wrap.

II.     *The Building Department and the Virginia Department of Environmental Quality.*

19)     Soon after the clearing project had completed in October 2017, Mr. Mendes discovered a "stop work order" issued by the Building Department attached to one of his structure's doors.

20)     Mr. Mendes promptly communicated and met with Kent Tamkin, a Building Department staffer a few days later where Plaintiff learned that DEQ and Mr. Tamkin had inspected the property and found there to be no problems. Mr. Tamkin advised Mr. Mendes that he believed the property was compliant and that Plaintiff just needed to obtain a Land Disturbance Permit.

21)     Mr. Mendes was told later that day by Mr. Tamkin that he should not obtain the Land Disturbance Permit yet until the Building Official, David Beahm, received written confirmation from DEQ that there were no issues with the property. Mr. Tamkin told Mr. Mendes that he had written confirmation from DEQ that the property was in compliance and that he would pass it to Mr. Beahm. Mr. Tamkin also said that he would let Plaintiff know when he could obtain the Land Disturbance Permit.

22)     Plaintiff did not hear back from anyone in the Building Department until February 2018.

23)     In February 2018, Mr. Mendes's contracted electrician could not obtain an electrical permit from the County because the Building Department had maintained a block on the Farm related to the 'Land Disturbance Permit' issue. Plaintiff promptly spoke with Mr. Tamkin about the matter. Mr. Tamkin apologized for not following up and stated that he had two e-mails from DEQ confirming no issues on the property and that those e-mails should suffice. However, Mr. Tamkin e-mailed Mr. Mendes later that day stating that he could not find the DEQ e-mails, and that Plaintiff should contact the DEQ officials who worked the case.

24)     Mr. Mendes promptly followed up with Mr. McCormack (DEQ). After some correspondence with Plaintiff, Mr. McCormack e-mailed David Beahm, and informed him that the property was in compliance with DEQ standards.

25)     Despite Mr. McCormack's express clearance, Mr. Beahm wrote to Mr. McCormack the following day questioning whether the property really was compliant with DEQ. Mr. Mendes

then saw the initiating complaint for the first time attached to the e-mail: A neighbor alleged that she saw Plaintiff's contractors remove vegetation along the river and toss it into the river. The neighbor has since recanted that allegation and acknowledged her narrative was not correct.

26)	Mr. McCormack responded to Mr. Beahm and reiterated that DEQ was satisfied and nothing further needed to be done.

27)	The following day, Mr. Mendes e-mailed Mr. Beahm and asked to move forward to issue his 'Land Disturbance Permit,' which by now had been delayed by Mr. Beahm for approximately three months. Mr. Beahm responded that Mr. Mendes could proceed with his 'Land Disturbance Permit' application, but that it would go through a complete review before it would be issued. Plaintiff stated that he did not understand as the property had previously been deemed compliant.

28)	Mr. Beahm responded to Mr. Mendes asserting that his property was not compliant and added numerous other Warren County officials as e-mail recipients. He further sought the opinion of Mr. Gary Flory, the DEQ stormwater manager to Mr. McCormack.

29)	Mr. Flory joined the e-mail exchange and confirmed DEQ's position that Mr. Mendes's contractor should have obtained a Construction Stormwater general permit issued by DEQ, but that because no adverse environmental impacts were observed, that DEQ did not intend to take any further action, and that DEQ was closing the case.

30)	Mr. Beahm then confirmed that because DEQ was not going to take any further action that the County could not take further action. Mr. Beahm finally backed off under protest. At that point, Mr. Mendes was no longer required to obtain a 'Land Disturbance Permit' and could proceed with obtaining his electrical permit.

31)	Notably, Mr. Mendes never filed a 'Land Disturbance Permit' with Warren County.

III.   *The Planning Department's Actions Against Plaintiff.*

32)   After the land clearing project was resolved, Mr. Mendes proceeded with building his nursery from March 2018 through January 16, 2019 without further governmental incident.

33)   On January 16, 2019, Mr. Mendes received a Notice of Violation issued by Defendant Joseph Petty, Warren County's then-Deputy Zoning Administrator.

34)   The letter alleged that Planning Department staff had been conducting county-wide aerial observations along the County's Special Flood Hazard Area following the record rainfall in 2018 and had observed multiple structures on Mr. Mendes's property. Per the letter, after consulting the Building Department, the Planning Department learned that there were no prior building permits issued for any of the buildings on the property except for electrical permits. The letter asserted that a zoning permit was required for all structures on the property and cited to several sections of the Warren County Code. The letter informed Mr. Mendes that he had thirty (30) days to bring his property into compliance or remove the structures.

35)   One of the allegations in the letter was that a wooden ramp on Mr. Mendes's property possibly violated the Marine Resource Commission's ("MRC") regulations, and that Mr. Jay Woodward of MRC had been alerted. Mr. Mendes promptly contacted Mr. Woodward by phone. Mr. Woodward stated that the ramp was compliant, and that he could not believe that a ramp of such size was brought to his attention. This was the second time that Warren County officials involved a third-party regulatory agency that found no action was warranted.

36)   Within a few days of receiving the Notice of Violation, Mr. Mendes contacted Defendant Petty to discuss the matter. Mr. Mendes informed Defendant Petty that he believed he was exempted from obtaining building permits for the subject buildings because they were used

primarily for agricultural purposes. Defendant Petty indicated that if that were the case, all that Mr. Mendes would need to do is install flood vents on the two metal garages.

37)     Defendant Petty stated that Defendant Wendling provided him the paperwork related to the violation. Plaintiff asked half-jokingly whether Defendant Wendling inspected the ramp from the river. Defendant Petty responded that Defendant Wendling must have seen it from the right-of-way (the roadway abutting the property).

38)     It is impossible to see the ramp from the right-of-way.

39)     On February 1, 2019, Defendant Petty e-mailed Plaintiff to inform him that all buildings on the property required permits although it was not clarified what permits were needed.

40)     On February 8, 2019, Mr. Mendes, Ms. Cassandra Mendell (Plaintiff's significant other), Ms. Susan Dujack, Defendant Petty, and Mr. Beahm met at the property. During the meeting, Mr. Petty stated to Plaintiff that while it was obvious that agricultural pursuits were occurring on the property, he was still required to submit an agricultural exemption zoning application to avoid a zoning permit. Plaintiff provided Defendant Petty a copy of a January 21, 2005 Planning and Zoning Department Interpretation he obtained from the Planning Department's website.

41)     The document expressly stated that "Buildings that are used for agricultural uses shall qualify for agricultural exemptions and not be required to obtain a *zoning* permit[,]" (*emphasis* in original). This interpretation is still publicly accessible via searching the Forms on the Planning & Zoning page as of the date this First Amended Complaint was filed, and still indicates that such document was uploaded on March 24, 2013.

42)     Despite providing Defendant Petty this document, Defendant Petty assured Mr. Mendes that he was required to file an agricultural exemption application. Nowhere in the Warren County Zoning Ordinance is the agricultural exemption application mentioned or referenced.

43)     Neither Mr. Beahm nor Defendant Petty indicated that any other action would be needed for Plaintiff to bring his property into compliance despite a lengthy inspection and numerous pictures taken of every structure on the property.

44)     Over the next several months from February 8, 2019 through April 8, 2019, the parties met several times at the property and communicated regarding what specifically needed to be done to bring the property into full compliance. At and after each meeting, the Planning Department's position changed so that Mr. Mendes's efforts to comply were fruitless.

45)     On or about March 20, 2019, Defendant Petty asked to confirm whether FEMA and Planning Department officials could enter and inspect the property. Mr. Mendes did not object.

46)     During FEMA's Community Assistance Visit that took place between March 26 through March 28, 2019, observations could only take place from the public right-of-way or with property owners' consent.

47)     On March 28, 2019, Ms. Dujack was present in Mr. Mendes's place to meet and guide Defendant Wendling, present on behalf of the County, and Mr. Charles Baker, a FEMA inspector. The group walked through and around the structures while Ms. Dujack described the measures taken to secure the structures to the ground to withstand flooding. Ms. Dujack asked the officials what, if anything, would be needed to bring the property into compliance. Neither official responded.

48)     On April 8, 2019, Mr. Mendes received a letter from Defendant Wendling titled "FEMA Site Visit and Staff Determination." The letter did not clarify which structures needed to be flood-proofed, or which techniques or guidelines should be used for flood-proofing.

49)     Numerous follow-up efforts by Plaintiff and his agents with Charles Baker and Matthew Wendling to understand what flood-proofing would be required were fruitless.

50)     On or about April 17, 2019, Plaintiff submitted his completed applications for agricultural exemptions for the deck, hoophouse, and two metal garages, which included FEMA-compliant flood vents that would be installed.

51)     On April 20, 2019, Plaintiff installed FEMA-compliant flood vents on his metal garages.

52)     Plaintiff received a letter from Mr. Petty titled "Zoning Determination" on May 1, 2019. Defendant Petty determined that *building* permits (not zoning permits) were required for all structures in the flood plain area.

53)     Mr. Mendes's former counsel timely filed an appeal to the Board of Zoning Appeals on May 31, 2019. Such appeal stated Plaintiff's concerns that he was unjustly and selectively targeted, that the Planning Department's determination was arbitrary, and that the Planning Department's legal interpretations were unsupported.

54)     On June 6, 2019, Plaintiff's former counsel was notified by Defendant Petty that Mr. Mendes was required to file a "residential" building permit because that is the form the County uses for any structure that is not "commercial" in nature. Information obtained from Freedom of Information Act ("FOIA") responses also demonstrated that residential building permits were not required for other non-commercial properties.

55)     On July 15, 2019, Mr. Mendes's current counsel filed a Statement of Justification that comprehensively stated the foregoing facts, and legal argument regarding why Plaintiff's property should have been found compliant with Warren County's Zoning Ordinance.

56)     On July 30, 2019, Mr. Mendes, Mr. Mendes's counsel, Ms. Mendell, Mr. Petty, Ms. Logan, and two Board of Zoning Appeals members attended a site visit at the Farm. When Planning Department staffers were asked whether they had any questions or concerns about any matters on the Farm, no one raised any concerns or asked any questions.

57)     On August 1, 2019, the first BZA hearing was held. Defendant Petty presented an unmodified Staff Report and Recommendation dated June 10, 2019 that required the Plaintiff to obtain 'residential building permits' to support his agricultural exemption applications to avoid needing a Zoning permit. This defeated the purpose for requesting an exemption.

58)     A significant component of Mr. Mendes's counsel's BZA presentation included Mr. Mendes's factual allegations that Planning Department staff had unjustly singled out his property, and that the only way the Planning Department could have known of certain facts about the Farm would be that a member of the Planning Department trespassed on the property.

59)     The BZA voted to postpone the matter to a second hearing date of September 5, 2019 and tasked the Planning Department to propose a solution.

60)     On August 29, 2019 at 4:56 p.m. (Thursday evening before Labor Day weekend Friday), Mr. Mendes and his counsel received an update from Defendant Petty via e-mail since the August 1, 2019 hearing concerning the Planning Department's position on the matter. Defendant Petty prepared a supplemental staff report that maintained the Planning Department's same position, and failed to offer a resolution consistent with what was asserted by Mr. Mendes— proof that the structures were built to flood-proofing standards.

61)     The supplemental staff report alleged two new issues that were never previously raised. The Planning Department also allegedly referred an issue to the Virginia Department of Health.

62)     This was the fourth time the Planning Department referred an issue to a third-party regulatory agency.

63)     Mr. Mendes prepared a supplemental statement of justification, which included references to newly acquired evidence proving that the Planning Department had selectively enforced the Zoning Ordinance against Mr. Mendes and that no other property owner in the

Special Flood Hazard Area was subject to not only the same scrutiny or proactive enforcement process as Plaintiff—but *any* enforcement process–from October 1, 2018 through April 1, 2019.

64)     On September 5, 2019, Defendant Petty called Mr. Mendes's counsel late in the morning to inform him that the Planning Department intended to present a new staff memorandum to the BZA that evening with a different recommendation than from the August 29, 2019 supplemental report. The Planning Department conceded that Plaintiff's legal interpretation of the Zoning ordinance was correct all along but required him to pay a ten dollar zoning permit fee for the deck because it would not otherwise meet the agricultural exemption.

65)     That night at the second BZA hearing, Defendant Petty presented both the August 29, 2019 supplemental staff report and the new staff memo and recommendation. The BZA did not allow Mr. Mendes or his counsel to present any newly obtained evidence, nor allow Mr. Mendes to speak when requested.

66)     The BZA passed a motion to overturn the Zoning Administrator's May 1, 2019 zoning determination "based on" the Planning Department's new staff memo and recommendation.

67)     Since the Planning Department cited Mr. Mendes on January 16, 2019 with a notice of violation, the Planning Department modified or otherwise added grounds to its legal position approximately fifty times for which Mr. Mendes and Mr. Mendes's counsel spent an inordinate amount of time and cost addressing each new position.

    IV.     *The Information Obtained from Freedom of Information Act Requests*.

68)     Throughout this matter, while in discussions with staff members of the Planning Department, Mr. Mendes learned that his property was allegedly targeted after an aerial surveillance was conducted in 2018 to assess potentially hazardous/non-compliant structures found within the Special Flood Hazard Area.

69)     To assess the veracity of this claim, on or about May 13, 2019, Mr. Mendes filed a

Virginia Freedom of Information Act request with the Warren County government requesting:

> "All public records . . . concerning investigations, surveillance, site
> visits and/or notices of violations of Warren County's Zoning
> ordinance or other laws carried out on properties that have a
> structure erected on lands designated as within the Special Flood
> Hazard Area (SFHA) created between October 1, 2018 and April
> 1, 2019. Please include all arial [sic] surveillance records of
> properties in the SFHA. … All public records . . . concerning
> unpermitted structures in Agricultural (A) Zoning District, created
> between October 1, 2018 and April 1, 2019."

70)     Plaintiff received a response on May 24, 2019. The Warren County FOIA officer notated

next to a copy of Plaintiff's request that there were no responsive records related to: (1) "all site

visits that pertain to structures located in the Special Flood Hazard Area"; and (2) "letters of

violation that pertain to structures located in SFHA."

71)     The Building Department notated in the response that no building permits were issued for

any structures located within the SFHA for that same period of time requested.

72)     Additionally, Plaintiff received and reviewed several other agricultural exemption

applications within the FOIA response none of which required the submission of a residential

building permit, and all were non-commercial in nature such as Plaintiff's.

73)     The response made clear that of the hundreds of miles of waterfront properties (Special

Flood Hazard Area) totaling more than two thousand six hundred (2,600+) distinct lots within

Warren County, only the Plaintiff was cited, inspected, sent letters of inquiry, or otherwise

contacted for violations of the Zoning Ordinance or building code between October 1, 2018

through April 1, 2019.

74)     On August 9, 2019, Mr. Mendes filed another, more comprehensive FOIA request with the Warren County government requesting records related to the Planning Department's actions dating back to November 2018 through August 9, 2019.

75)     Warren County responded on August 30, 2019 establishing that from October 2018 through May 29, 2019, Plaintiff was the *only* property owner in all of Warren County within the Special Flood Hazard Area proactively inspected and contacted by the Planning Department to rectify non-compliance issues initiated by the Planning Department.

76)     After Plaintiff raised his concerns about selective enforcement to the Planning Department and after his first FOIA request, for the first time in at least six months on May 29, 2019, the Planning Department sent 'notices of zoning inspection' to more than fifty property owners within the SFHA—not notices of zoning violations.

77)     Just like Mr. Mendes's property, at least thirteen other properties were contacted concerning potential and actual violations that: (1) had non-permitted accessory structures; (2) were located within the SFHA; (3) were readily observable or otherwise discoverable by use of mapping technologies or via observations from public right-of-ways; and (4) the non-permitted structures were not grandfathered in by being built prior to 2007.

78)     The Planning Department's process applied to those other property owners was vastly different than how the Planning Department addressed Plaintiff's property. Plaintiff never received a notice of zoning inspection; a notice of follow-up and determination; received phone calls; was threatened to bring his property into compliance within thirty days or tear down his structures in his first notice; was the only SFHA property contacted by Defendant Petty; and never received any guidance proactively from the Planning Department to bring his property into compliance, but rather, had to repeatedly ask for 'next step' directions.

79)     However, other property owners on and after May 29, 2019 received non-intrusive notices of zoning *inspections* (requests to first inspect the property); were provided clear directions for bringing properties into compliance with numerous opportunities to correct deficiencies; were contacted by Defendant Wendling; and were issued notices of violation only after efforts to resolve issues amicably failed.

80)     One of the e-mails obtained through FOIA was dated August 2, 2019 from Defendant Wendling to Charles Baker included the following statements:

> "I'll be sending you the Power-point presentation that Mr. Mendes's attorney gave to the BZA at last night's meeting once we receive it. But I had a couple questions for you because the BZA postponed their decision regarding this matter after having a public hearing. To your knowledge and where might it be addressed in 44CFR that a local Floodplain Manager or official has a right to access properties located in the SFHA down to the river (Floodway) to investigate violations without the property owner's permission? The question came up about the ramp to the river which is not visible from the public right-of-way and the only way to observe it is going on the property."

81)     The only reasonable interpretation of that e-mail is that Wendling acknowledged having trespassed on the Farm and was seeking some form of retroactive legal justification for doing so.

82)     Defendant Petty was copied on that e-mail involving Charles Baker. At no point has Defendant Petty ever acknowledged to Mr. Mendes or Mr. Mendes's counsel that Defendant Wendling or any other staff member of the Planning Department had trespassed on the Farm.

83)     Planning Department Director, Taryn Logan, never addressed any of Mr. Mendes's concerns raised regarding trespassing or his complaints about the Planning Department's constantly changing positions.

84)     Mr. Mendes sustained thousands of dollars in legal fees after needing to hire attorneys to bring resolution to the frivolous legal positions, and bad faith conduct of the Warren County

government officials named herein. He also sustained thousands of dollars in lost income, costs associated with delays to his farming business, and incurred expenses associated with attending to these matters with the Warren County Planning Department.

85)     Despite the financial loss Mr. Mendes has sustained, his greatest injury has been to his dream of developing the Farm for the dual purpose of building a quiet, rural business enterprise, and building a residence on the property for him and his family to move to. The actions of the Planning Department have crushed any sense of hope and joy that he once derived from working the Farm, and his expectancies of quietly enjoying the second half of his life along the Shenandoah River concentrating on a balanced lifestyle.

86)     Mr. Mendes and his family no longer feel physically safe on the property since learning of Defendant Wendling's trespass onto the property, and after discovering to what lengths they would go to cover up their lies.

87)     The actions of the Planning Department stated in the prior paragraphs were willful, wanton, and taken with the ill intention of causing injury to Mr. Mendes. To the extent that any such action taken was less than intentional, then such actions taken were grossly negligent, if not reckless, and without regard for the Plaintiff's, or his family's financial welfare.

### AS AND FOR A FIRST CAUSE OF ACTION

Mr. Mendes's Property Rights Were Infringed Upon Under the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, and 42 U.S.C. § 1983

88)     Mr. Mendes realleges the facts stated in all preceding paragraphs as if stated fully herein.

89)     Mr. Mendes's property rights as they are otherwise guaranteed under the equal protection clause of the Fourteenth Amendment were infringed upon by actions taken by staff members of the Planning and Building Departments.

90)     Particularly, Mr. Mendes was injured as a "class of one" by the arbitrary and capricious actions taken by the staff members of the Planning Department.

91)     Mr. Mendes was the only Special Flood Hazard Area property owner in all of Warren County proactively (illegally) inspected and cited for *any* kind of Zoning violation from October 1, 2018 through May 28, 2019.

92)     At the time that Mr. Mendes's property was alleged to have been discovered and found in violation of the Zoning Ordinance for having a non-permitted accessory structure within the SFHA, at least thirteen other properties could have been cited for that same issue.

93)     Specifically, the following properties located within the SFHA of Warren County could have been cited at the same time as Mr. Mendes's property (January 16, 2019) for the same or very similar violations if the Planning Department conducted a review of the SFHA as it had alleged and should have been subjected to the same process that Plaintiff had been subjected to:

    a.  Tax Map # 19H-1-Parcel 30 (Non-permitted accessory structure existing since 2015);

    b.  Tax Map # 41A-Parcel 13 (Non-permitted accessory structure existing since 2015)

    c.  Tax Map # 13A-5-Parcel 11 (Non-permitted accessory structure existing for unknown period of time but not grandfathered in);

    d.  Tax Map # 20C-1-A-Parcel 3 (Non-permitted accessory structure existing for unknown period of time but not grandfathered in);

    e.  Tax Map # 13C-4-4-Parcel 604 (Non-permitted accessory structure existing since 2015);

    f.  Tax Map # 13C-1-S-Parcels 15 & 16 (Non-permitted accessory structure existing since 2015);

g.  Tax Map # 13A-5-Parcels 6 & 7 (Non-permitted accessory structures existing for
unknown period of time but not grandfathered in);

h.  Tax Map # 19F1-1-Parcels 13B, 14C, 15C, 16C (Non-permitted accessory structures
for unknown period of time but not grandfathered in);

i.  Tax Map # 27E-1-1-Parcel 7 (Non-permitted accessory structure existing after 2015);

j.  Tax Map # 13C-4-4-Parcel 606 (Non-permitted accessory structure newly erected);

k.  Tax Map # 26C-1-1-Parcel 15 (Non-permitted accessory structures existing after 2015);

l.  Tax Map # 13A-5-Parcel 16A (Non-permitted accessory structure for unknown
period of time but not grandfathered in).

94)   Mr. Mendes's and all the specifically mentioned properties are and were subject to the
Warren County Zoning Code Ordinance § 180-16.F (1)(a) and (b) requiring that "All uses,
activities, and development occurring within any floodplain district shall be undertaken only
upon the issuance of a zoning permit…"

95)   Being the only SFHA property owner proactively targeted and enforced against over a
six-month period of time when there were hundreds of miles of riverfront properties within
Warren County's SFHA boundaries, and when the Planning Department allegedly was
conducting a county-wide aerial surveillance review of riverfront properties for potential
violations defies rational explanation and reasonably anticipated enforcement results.

96)   No other property owner within the SFHA whose property was non-compliant with the
Zoning Ordinance from October 1, 2018 through May 28, 2019 received the same level of
treatment. *See supra* ¶¶ 78-79.

97)   The Planning Department's decision to proactively enforce the Warren County Zoning
Ordinance only against Mr. Mendes as the only non-compliant SFHA property owner to receive

a notice of violation for six months during an alleged county-wide floodplain review lacked any rational basis in difference in treatment.

98)     Mr. Mendes's efforts to resolve the Zoning Ordinance dispute were repeatedly thwarted by the Planning Department's actions by constantly modifying their positions and compliance requirements. There was no rational basis for such numerous and endless modifications, especially as evidenced by the clear guidance provided to subsequent properties cited as non-compliant.

99)     Defendant Wendling's, Defendant Petty's, and Defendant Logan's decisions to initially enforce and continue the abusive process of enforcement of the Warren County Zoning Ordinance only against Mr. Mendes  were intentional and could not have been carried out absent the information obtained from the unconstitutional search of his property evidenced by Defendant Wendling's admission that he trespassed on the Farm without legal authority and without Mr. Mendes's consent.

100)    The deprivations of Mr. Mendes's property rights and the actions of the Planning Department and its staff members alleged herein have caused injury to him. Mr. Mendes seeks compensatory damages for these injuries.

101)    The individually named Defendants of the Planning Department acted willfully and wantonly, and are deserving of punitive action. Plaintiff requests punitive damages accordingly.

## AS AND FOR A SECOND CAUSE OF ACTION

Plaintiff's Property Rights Were Infringed Upon Under the Fourth Amendment as Applied Through the Fourteenth Amendment of the United States Constitution, and 42 U.S.C. § 1983

102)    Mr. Mendes realleges the facts stated in all preceding paragraphs as if stated fully herein.

103)    Mr. Mendes maintains an undeniable right to be secure from unreasonable searches and seizures of his person and property.

104)    A physical intrusion by a local government official onto privately owned property that is not open to the public for the purposes of searching for evidence of unlawful activity without a validly issued search warrant or the consent of the owner is unlawful and constitutes a violation of a person's property rights.

105)    The ramp on Mr. Mendes's Farm cannot be seen by the naked eye or even with the assistance of optical enhancing equipment (i.e. binoculars or similar devices) from the public right-of-way, and can only be seen by physically entering onto the property several hundred feet.

106)    Mr. Mendes's Farm has a gate at the public right-of-way that is locked when the Plaintiff or his agents are not on the property. There are numerous "NO TRESPASSING" signs prominently displayed.

107)    Aside from Mr. Mendes's meeting with Kent Tamkin in or about October 2017, until February 2019, he never consented to any Warren County government officials entering onto or accessing his property.

108)    Mr. Mendes never received any notice that Planning Department officials sought to enter his property or sought his consent to enter his property prior to his communications with the Planning Department after receiving the January 2019 notice of violation.

109)    As determined by DEQ and Mr. Beahm, no Land Disturbance Permit was ever filed or required to be filed with Warren County's Building Department, thus no Warren County official had any right to enter Plaintiff's property without his consent, especially after the matter involving DEQ in 2017-2018 was resolved.

110)    Defendant Wendling is not a staff member of the Building Department, which is tasked with enforcing land disturbance regulations in Warren County. At no time did Defendant

Wendling have the authority or consent to enter Mr. Mendes's property until invited by him in February 2019.

111)    Defendant Wendling acknowledged in e-mail communications with Charles Baker that he entered onto Mr. Mendes's Farm without his consent or knowledge.

112)    Defendant Wendling entered Mr. Mendes's Farm without legal basis, nor did he believe that he had such a right to enter the Farm as his communications with Charles Baker reflect that he was unaware of any legal authority granting him the right to access the property.

113)    Further, Defendant Wendling lacked any reasonable grounds to suspect that Mr. Mendes was violating the Warren County Zoning Ordinance.

114)    Per Defendant Petty's statements to Mr. Mendes, the underlying notice of violation was initiated by Defendant Wendling.

115)    In or about January 2019, Defendant Petty informed Mr. Mendes that he understood that Defendant Wendling's information about the Farm was derived from seeing the property from the public right-of-way. As Defendant Petty was carbon copied on the e-mail to Mr. Baker in August 2019 where Defendant Wendling acknowledged trespassing on the Farm, Defendant Petty is presumed to have had knowledge that Defendant Wendling trespassed and either encouraged him or assisted in covering up the fact that Defendant Wendling trespassed.

116)    The deprivations of Mr. Mendes's civil and property rights, and the actions of the Planning Department and its staff members alleged herein have caused injury to the Plaintiff. Mr. Mendes seeks compensatory damages for these injuries.

117)    The individually named Defendants of the Planning Department acted willfully and wantonly, and deserve punitive action. Plaintiff requests punitive damages accordingly.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff demands judgment and prays for the following relief against the Defendants in their respective capacities as set forth below:

A.      As to the Warren County and its named staff members of the Planning Department:

    (1) awarding compensatory damages in an amount not anticipated to exceed One Hundred and Fifty Thousand Dollars ($150,000.00) jointly and severally;

    (2) awarding punitive damages in an appropriate amount not to exceed One Hundred Thousand Dollars ($100,000.00) jointly and severally;

B.      An order issuing an injunction restricting Warren County and the individually named Defendants so long as they continue employment with Warren County from initiating, investigating, advising, determining, or taking any action against the Plaintiff or the Plaintiff's property located within Warren County absent oversight by a reputable, third-party capable of performing the same analyses that Warren County would have been required to perform while Plaintiff remains the owner or maintains an ownership interest in the property;

C.      An award for reasonable attorney's fees and the costs of litigation of this action pursuant to 42 U.S.C. § 1988(b) from all parties subject to claims premised on 42 U.S.C. § 1983; and

D.      An award for other and further relief as the Court deems just, proper, and equitable.

Dated:   July 15, 2020                    The Law Offices of Timothy R. Johnson, PLC
         Berryville, Virginia

                                                    / s /

                                          _____
                                          By: Timothy R. Johnson (VSB No. 87673)
                                          20-B East Main Street
                                          Berryville, VA 22611
                                          P: 540.352.4672
                                          F: 540.595.3500
                                          E: trjohnson@trjlegal.com
                                          *Counsel for Plaintiff*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 15th day of July, 2020, I attempted to electronically file the foregoing <u>First Amended Complaint</u> with the Clerk of Court using the CM/ECF system, but due to technical difficulties was unable to effect e-filing on July 15, 2020. However, I e-mailed the document counsel of record for the Defendants, namely:

Heather K. Bardot, Esq. (VSB 37269)
BANCROFT, McGAVIN, HORVATH & JUDKINS, P.C.
9990 Fairfax Boulevard, Suite 400
Fairfax, Virginia 22030
Phone: (703) 385-1000
Facsimile: (703) 385-1555
E-mail: Hbardot@bmhjlaw.com
*Counsel for Defendants*

Dated:   July 15, 2020                    The Law Offices of Timothy R. Johnson, PLC
         Berryville, Virginia

                                              / s /
                                         _____
                                         By: Timothy R. Johnson (VSB No. 87673)
                                         20-B East Main Street
                                         Berryville, VA 22611
                                         P: 540.352.4672
                                         F: 540.595.3500
                                         E: trjohnson@trjlegal.com
                                         *Counsel for Plaintiff*