IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| NELSON MENDES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 5:19-cv-00072 |
| ) | |
| MATTHEW WENDLING, *et al.*, ) | By: Elizabeth K. Dillon |
| ) | United States District Judge |
| Defendants. ) | |

**MEMORANDUM OPINION**

In this action, plaintiff Nelson Mendes has alleged various claims related to zoning disputes involving Mendes's farming property. (Am. Compl., Dkt. No. 17.) On June 25, 2020, the court granted defendants' motion to dismiss Mendes's complaint as to all claims and all defendants except Mendes's Fourth Amendment claim against Matthew Wendling. (Dkt. No. 13.) Subsequently, the court granted Mendes leave to file an amended complaint. (Dkt. No. 16.) Mendes's amended complaint alleges equal protection and Fourth Amendment claims against defendants Wendling, Joseph Petty, Taryn Logan, and Warren County. (Am. Compl., Dkt. No. 17.)[1]

Defendants now move to dismiss the amended complaint. (Dkt. No. 19.) Following a hearing (Dkt. No. 25) and supplemental briefing (s*ee* Dkt. Nos. 26–29), and for the reasons stated below, defendants' motion will be granted in part and denied in part.

---

[1] Mendes concedes that his complaint does not state an actionable claim against Warren County for *Monell* liability. Therefore, the motion to dismiss will be granted as to Warren County.

1

I.  BACKGROUND[2]

Warren County is a local government.  Defendant Wendling is its Floodplain Manager, Petty is the Zoning Administrator and was the Deputy Zoning Manager through August 2019, and Logan is the Planning Director.  (Am. Compl. ¶¶ 8-11.)  The Planning Department is the municipal department charged with enforcing the Warren County Zoning Code Ordinance Section 180-16F(1)(a) and (b) (the "Ordinance"), which authorizes the Planning Department and its members to manage the Warren County Special Flood Hazard Area (SFHA).  The Ordinance requires "all uses, activities, and development occurring within any floodplain district [to be undertaken] only upon the issuance of a zoning permit . . . ."  (*Id.* ¶ 94.)

This dispute concerns property located on the South Fork of the Shenandoah River.  The property lies within the SFHA, under jurisdiction of the Ordinance.  Mendes purchased the property in May 2017 with plans to build a residence and develop the site for his farming business.  In September 2017, Mendes hired contractors to clear the property and erected a greenhouse.  (*Id.* ¶¶ 16–18.)  One month later, the Warren County Building Inspections Department (Building Department)[3] issued a "stop work order" and instructed Mendes to obtain a Land Disturbance Permit (LDP) before continuing planned improvements on the property.  (*Id.* ¶ 19–20.)  Mendes contacted the Building Department, who believed that the property was in compliance and advised Mr. Mendes to obtain a LDP at the conclusion of the Virginia Department of Environmental Quality's (DEQ) inspection.  (*Id.* ¶ 21.)

In February 2018, while seeking an electrical permit from the County, Mendes discovered

---

[2]  The following factual background is taken from the allegations in the first amended complaint (Dkt. No. 17), which are accepted as true for purposes of this motion and construed in the light most favorable to Mendes.

[3]  The Building Department is distinct from the Planning Department.  It is the department responsible for enforcing the Virginia Statewide Building Code and the Erosion and Sediment Control Handbook.

that DEQ had not concluded its inspection of the property. (*Id.* ¶ 23.) This information concerned Mendes, as he had been repeatedly assured through oral communications with the Building Department and DEQ personnel that the property was compliant. (*Id.* ¶¶ 20, 21, 23, 24.) Mendes followed up with DEQ, who eventually decided to close the case. (*Id.* ¶ 30.) During this exchange, DEQ shared its position with Mendes and various Warren County officials that Mendes's contractor should have obtained a Construction Stormwater general permit from DEQ, but DEQ would not pursue further action because there were no adverse environmental impacts. (*Id.* ¶ 29.) Upon DEQ's representation that its decision foreclosed possible action by the County, Mendes continued improvements to the property through January 2019 without a LDP. (*Id.* ¶¶ 29–30.)

On January 16, 2019, Mendes received a Notice of Violation from Deputy Zoning Administrator Petty. The letter stated that the Planning Department conducted county-wide observations of properties along Warren County's SFHA following a record rainfall in 2018 and cited Mendes for several Zoning Ordinance violations, including a wooden ramp on Mendes's property that possibly violated the Marine Resource Commission's regulations. (*Id.* ¶¶ 33–35.) Upon receipt of the letter, Mendes contacted Petty at the Planning Department to discuss the matter. (*Id.* ¶ 36.) Petty told Mendes that Matthew Wendling, the Floodplain Manager, provided him with the paperwork related to the ramp violation. (*Id.* ¶ 37.) Plaintiff asked whether Wendling inspected the ramp from the river. (*Id.*) Petty responded that Wendling must have seen it from the road abutting the property. (*Id.*) Mendes maintains that it is impossible to see the ramp from this right-of-way. (*Id.*)

On February 8, 2019, members of the Planning and Building Departments— including Petty—visited the property at Mendes's request. (*Id.* ¶ 40.) From February 8, 2019, through

April 8, 2019, the parties met several times at the property and communicated regarding what specifically needed to be done to bring the property into full compliance. (*Id.* ¶ 44.) On May 1, 2019, Mendes received a "Zoning Determination" from the Planning Department which required Mendes to obtain various permits for all structures within the flood plain area. (*Id.* ¶ 52.) Mendes filed a notice of appeal to the Warren County Board of Zoning Appeals (BZA). (*Id.* ¶ 53.) Over the course of two BZA hearings, on August 1 and August 29, 2019, the Planning Department changed its position articulated in the Zoning Determination. The Planning Department conceded that Mendes's legal interpretation of the Ordinance was correct and that he was entitled to an agricultural permit exemption for all but one structure on the property. Based upon the changed position of the Planning Department, the BZA passed a motion to overturn the Planning Department's original Zoning Determination.

During his dispute with the Planning Department, Mendes explored the veracity of the Planning Department's claim that his property was targeted after the 2018 aerial surveillance campaign across the SFHA. (*Id.* ¶ 68.) To this end, Mendes filed a Virginia Freedom of Information Act (FOIA) request with Warren County around May 13, 2019. (*Id.* ¶ 69.) When Mendes learned that there were no responsive records, he filed another request on August 9, 2019. (*Id.* ¶ 70, 74.) Based on the County's response to his second request, Mendes discovered that from October 2018 through May 29, 2019, plaintiff was the only property owner within the Warren County SFHA proactively inspected and contacted by the Planning Department to rectify non-compliance issues under the Ordinance. (*Id.* ¶ 75.) Mendes further learned that the Planning Department sent notices of zoning inspection to more than fifty property owners only after he raised concerns about selective enforcement to the Planning Department. (*Id.* ¶ 76.) Of these fifty properties, Mendes identifies thirteen other properties that were contacted concerning

potential and actual violations that (1) had non-permitted accessory structures; (2) were located within the SFHA; (3) were readily observable or otherwise discoverable using of mapping technologies or via observations from public right-of-ways; and (4) the non-permitted structures were not grandfathered in by being built prior to 2007.  (*Id.* ¶ 77.)

In addition, the FOIA requests revealed an email in which Wendling apparently acknowledges trespassing on Mendes's Farm.  (*Id.* ¶ 80.)  This email, addressed to a FEMA Agent and dated August 2, 2019, reads as follows:

> I'll be sending you the Power-point presentation that Mr. Mendes's attorney gave to the BZA at last night's meeting once we receive it.  But I had a couple questions for you because the BZA postponed their decision regarding this matter after having a public hearing.  To your knowledge and where might it be addressed in 44CFR that a local Floodplain Manager or official has a right to access properties located in the SFHA down to the river (Floodway) to investigate violations without the property owner's permission?  The question came up about the ramp to the river which is not visible from the public right-of-way and the only way to observe it is going on the property.

Petty was copied on the e-mail.  (*Id.* ¶ 82.)

II.  DISCUSSION

**A. Standard of Review**

To survive a motion to dismiss, the complaint must "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible if the plaintiff pleads factual content that allows the court to draw a "reasonable inference that the defendant is liable for the alleged misconduct."  *Iqbal*, 556 U.S. at 678.  In determining whether Mendes has satisfied this plausibility standard, the court must accept as true all well-pleaded facts in the complaint and "draw[] all reasonable factual inferences from those facts in [Mendes's] favor," *Edwards v. City*

*of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999), but it need not "accept the legal conclusions drawn from the facts" or "accept as true facts or unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). "Threadbare recitals" of the elements of each cause of action will not suffice. *Iqbal*, 556 U.S. at 678. The complaint must allege enough facts from which the court, calling upon "its judicial experience and common sense," *id.* at 679, can conclude that Mendes is entitled to relief.

**B.  Section 1983 and Qualified Immunity**

To state a claim under 42 U.S.C. § 1983, a plaintiff "must aver that a person acting under color of state law deprived him of a constitutional right or a right conferred by a law of the United States." *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 (4th Cir. 2009). State and local government officials sued in their individual capacities are not immune from liability under the Eleventh Amendment, but they may be protected from liability under the doctrine of qualified immunity. *Hafer v. Melo*, 502 U.S. 21, 25, 31 (1991).

Qualified immunity shields government officials from civil damages liability "so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "To determine whether a complaint should survive a qualified-immunity based motion to dismiss, courts exercise 'sound discretion' in following the two-prong inquiry set forth by the Supreme Court." *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020). Under the first prong, the court considers whether the facts alleged by the plaintiff establish that the defendants violated a constitutional right. *Meyers v. Balt. Cnty.*, 713 F.3d 723, 731 (4th Cir. 2013) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Under the

second prong, the court determines "whether the right at issue was 'clearly established' at the time of the defendants' conduct." *Id.* (quoting *Saucier*, 533 U.S. at 201).

**C. Equal Protection**

In support of his equal protection claim, Mendes alleges he was the only SFHA property owner "proactively (illegally) inspected and cited" over a six-month period when the County allegedly conducted an aerial surveillance review of riverfront properties for potential violations. (*Id.* ¶ 91.) He states there were multiple, non-compliant, riverfront properties under the scope of the Ordinance, noting that each of these parcels includes a non-permitted accessory structure. (*Id.* ¶ 93.)

Mendes may state a successful class-of-one equal protection claim if he can allege that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). The Supreme Court has held that a class-of-one plaintiff must show that the difference in treatment resulted from non-discretionary state action. *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 603 (2008). *Engquist* was decided in the context of a claim by a government employee against his employer. Even so, defendants argue that *Engquist* forecloses class-of-one claims in connection with discretionary decisions unrelated to government employment.

Contrary to defendants' argument, the Fourth Circuit has held that a class-of-one equal protection claim may survive in a discretionary enforcement context. *See Pulte Home Corp. v. Montgomery Cty., Maryland*, 909 F.3d 685 (4th Cir. 2018). In *Pulte*, a land dispute case involving the enforcement of a zoning ordinance, the Fourth Circuit reviewed the district court's grant of defendant's motion for judgment on the pleadings. *Id.* at 689–91. In that case, the county adopted a plan which severely reduced the development potential of certain parcels of

land acquired by Pulte between 2014 and 2016. *Id*. Pulte sued in response to what it perceived as an arbitrary and capricious targeting of its land. *Id.* at 691. Pulte's complaint, among other things, alleged an equal protection claim. *Id*.

While *Pulte* gives deference to the Supreme Court's concern in *Engquist,* it suggests that rational basis review curtails judicial reach into municipal land disputes. *Id.* at 694 ("It is not this court's place to second-guess the wisdom of elected local officials in making inherently discretionary zoning decisions."). Considering Pulte's equal protection claim, the court cited the Supreme Court's reasoning in *Engquist*:

> There are some forms of state action, however, which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments. In such cases the rule that people should be 'treated alike, under like circumstances and conditions' is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted. In such situations, allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise.

*Id.* at 694–95 (citing *Engquist*, 553 U.S. at 603). The court then classified local land use decisions as "quintessential example[s] of subjective and individualized action by decisionmakers vested with the discretion needed to balance competing interests." *Id*. at 695. However, "[w]hen those who appear similarly situated are nevertheless treated differently, the Equal Protection Clause requires at least a rational reason for the difference . . ." *Id.* (citing *Engquist*, 553 U.S. at 602). The court determined that the county offered rational reasons for treating Pulte's land differently because its plan included detailed environmental concerns specific to Pulte's property. *Id*. at 694–95. Because the relevant amendment to the plan was valid and part of the pleadings at the time of defendant's motion, the district court's entry in favor of defendants was proper. *See id.* at 694; *id.* at 696 (quoting *Van der Linde Housing, Inc. v. Rivanna Solid Waste Auth.*, 507 F.3d 290, 293 (4th

8

Cir. 2007) ("Pulte has not carried its 'heavy burden of negating every conceivable basis which might reasonably support the challenged classification.'")).

Mendes alleges that he was the only SFHA property owner in Warren County inspected and cited for any zoning violation from October 2018 to May 2019. (Am. Compl., ¶¶ 95–96.) Mendes claims that at least thirteen other properties could have been cited for having a non-permitted accessory structure at the time Mendes's property received his Zoning violation. (*Id.* ¶ 93.) Moreover, the thirteen properties are located within the SFHA of Warren County and subject to the Zoning Ordinance. (*Id.* ¶ 94.) Because Mendes was the only non-compliant SFHA property owner to receive a notice of violation during an alleged county-wide floodplain review, the Planning Department's enforcement of the Ordinance lacked any rational basis. (*Id.* ¶ 95.) Construing the amended complaint in the light most favorable to Mendes, *Engquist* as interpreted by *Pulte* does not foreclose his claim at the pleading stage. It does, however, impose a heavy burden for Mendes to carry in the next phase of this litigation.

Defendants also argue that Mendes failed to meet the pleading requirements for a class-of-one claim. The court previously noted that the original complaint likely met the pleading standard set forth in *Olech* but fell short of the more rigorous standards imposed by *Twombly* and *Iqbal*. *See Mendes v. Beahm*, Civil Action No. 5:19-cv-00072, 2020 WL 3473656, at *5–7 (W.D. Va. June 25, 2020) (explaining that most courts of appeals "apparently require plaintiffs to name specific parties or to assert facts at the motion-to-dismiss stage showing that there is a reasonably close similarity between those parties and the plaintiffs") (citing *Foster v. United States EPA*, No. 2:14-cv-16744, 2016 WL 4473453, at *8 (S.D. W. Va. Aug. 22, 2016) (collecting cases)).

Defendants concede that the amended complaint provides more detail about the

9

comparable properties than did the original complaint. However, defendants argue that Mendes still fails to plead facts "plausibly suggesting the conditions on the properties and the properties themselves are similar in all material respects." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1220 (10th Cir. 2011). Defendants contend that "[n]o information is furnished about the size or zoning of the other properties, the location of the properties vis-à-vis waterways or other properties, the type of accessory structures on the other properties, the number of accessory structures on the other properties, the types of violations on the other properties . . . ." (Def.'s Mem. 13, Dkt. No. 20.)

Mendes points out that after he raised concerns about selective enforcement to the Planning Department, other property owners received notices of inspection, orders to bring their properties into compliance, and in some cases notices of violations. (Am. Compl., ¶ 76.) Mendes alleges at least thirteen other properties "were contacted concerning potential and actual violations that: (1) had non-permitted accessory structures; (2) were located within the SFHA; (3) were readily observable or otherwise discoverable by use of mapping technologies or via observations from public right-of-ways; and (4) the non-permitted structures were not grandfathered in by being built prior to 2007." (*Id.* ¶ 77.) These facts suggest that the properties are in fact similar in all material ways—materiality premised on the property's eligibility for zoning infractions related to non-permitted accessory structures.

As further distinctions between the properties that should be addressed by the complaint, defendants offer "what enforcement action occurred with respect to the other properties, what action the other property owners took in response to any enforcement action, whether the other property owners disputed the County's position such that a dispute arose, etc. . . ." (Defs.' Mem. 13.) However, the standard requires material similarities "on the properties themselves."

10

*Kansas Penn Gaming*, 656 F.3d at 1220. These differences are not conditions on the properties; rather, they are differences in how the various properties were treated.

Defendants' remaining argument rests upon a series of cases that require a plaintiff in a class-of-one claim to "demonstrate that he and his comparators are '*prima facie* identical in all relevant respects.'" (Defs.' Mem. 13) (quoting *Neilson v. D'Angelis*, 409 F. 3d 100, 104 (2d Cir. 2005)). While defendants correctly assert that Mendes has a "high burden," the burden they identify is the burden of proof, not the burden of pleading. *See Neilson*, 409 F. 3d at 104 (assessing a Rule 50(b) motion for judgment as a matter of law following trial); *see also Purze v. Village of Winthrop Harbor*, 286 F.3d 452, 455 (7th Cir. 2002) (reviewing the district court's grant of summary judgment). To survive defendants' Rule 12(b)(6) motion, Mendes must plead specific facts "plausibly suggesting the conditions on the properties and the properties themselves are similar in all material respects." *Kansas Penn Gaming*, 656 F.3d at 1220. Under this standard, Mendes has properly pled similarity in a class-of-one claim in the amended complaint.

With respect to qualified immunity, defendants' argument is premised on their contention that Mendes failed to state an actionable class-of-one equal protection claim. Defendants have not presented any argument that Mendes's equal protection rights were not clearly established at the time of the alleged violation. Therefore, the court finds, at least at the pleading stage, that defendants are not entitled to qualified immunity on Mendes' equal protection claim. *See Henry v. Purnell*, 501 F.3d 374, 378 (4th Cir. 2007) (stating that the plaintiff bears the burden on the first prong of the qualified immunity defense, and defendant bears the burden on the second prong, that the right was not clearly established); *Hulbert v. Pope*, Civil Case No. GLR-18-0461, 2019 WL 1409707, at *5 (D. Md. Mar. 28, 2019) (citing *Henry* and applying these burdens to a

motion to dismiss).[4]

Finally, the court notes that defendants appear to argue that Mendes's equal protection claim should be dismissed as to Petty and Logan because they were simply "engaged in the enforcement of the County's zoning laws." (Defs.' Mem. 14–15.) The court does not agree with this underdeveloped argument. As the foregoing demonstrates, Mendes has plausibly alleged that the defendants' actions in enforcing the County's zoning laws violated equal protection.

## D. Fourth Amendment

Mendes claims that Wendling violated the Fourth Amendment when he illegally entered Mendes's farm to look for evidence of potential zoning violations without his consent. (Am. Compl. ¶ 112.) To support this claim, Mendes asserts that Wendling acknowledged the trespass in communications with Charles Baker, a FEMA inspector. (*Id.* ¶ 111.) Mendes also claims that Wendling's entry occurred with knowledge he had no such right to enter and that Wendling lacked any reasonable grounds to suspect a violation of the Zoning Ordinance. (*Id.* ¶ 112.)

The Fourth Amendment protects "'the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'" *Dist. of Columbia v. Wesby*, 138 S. Ct. 577, 585 (2018) (quoting U.S. Const. amend. IV). A "search" for purposes of the Fourth Amendment may occur when the government intrudes upon a person's reasonable expectation of privacy. *Katz v. United States*, 389 U.S. 347, 360 (1967). A search may also occur when the government intrudes or trespasses upon a constitutionally protected area for the purposes of obtaining information. *See Asbury v. Ritchie Cnty. Comm'n*, Civil Action No.

---

[4] The court acknowledges cases that find that plaintiff bears the burden of showing that defendant violated clearly established law when qualified immunity is raised in a motion to dismiss. *See, e.g.*, *Branham v. Parker*, Civil Action No. 7:15-cv-00351, 2016 WL 1259106, at *3 (W.D. Va. Mar. 28, 2016) (citing *Breidenbach v. Bolish*, 126 F.3d 1288, 1291 (10th Cir. 1997)). No matter which party shoulders this burden at the pleading stage, the court is not in a position to address the clearly established issue because it has not been addressed in the briefing by either party.

1:16CV132, 2018 WL 445110, at *5 (N.D. W. Va. Jan. 16, 2018) (citing *United States v. Jones*, 565 U.S. 400, 408 n.5 (2012)).

As the court explained in its previous opinion, Mendes's claim against Wendling should be analyzed under Fourth Amendment jurisprudence regarding administrative searches and inspections. *Mendes*, 2020 WL 3473656, at *8 (citing *New York v. Burger*, 482 U.S. 691, 702–03 (1987)). Under this line of cases, a broad administrative search will not violate the Fourth Amendment where (1) there is a "substantial" government interest that informs the regulatory scheme pursuant to which the inspection is made; (2) the warrantless inspection is necessary to further the regulatory scheme; and (3) the statute's inspection program, in terms of the certainty and regularity of its application, provides a constitutionally adequate substitute for a warrant. *Id.*

Defendants cite to the Virginia Code, which requires counties and cities to establish a Virginia Erosion and Sediment Control Program (VESCP). Va. Code. Ann. § 62.1-44.15:54. Defendants identify that Warren County has established such a program in compliance with Virginia Code, codified in the Warren County Code at Chapter 150, *et seq*. (making it "unlawful for any person to engage in any regulated land-disturbing activity . . . until he has submitted an erosion and sediment control plan to the County for the land-disturbing activity, the plan has been reviewed, approved and a land-disturbing permit has been issued by the County authorizing the land-disturbing activity to commence"). In addition, the Virginia Code also allows the VESCP or its duly authorized agent to enter onto public or private property at reasonable times and under reasonable circumstances to obtain information and conduct surveys or inspections necessary to enforce the locality's VESCP. Va. Code Ann. § 62.1-44.15:60.

However, Mendes's complaint states that Wendling was the Floodplain Manager in the Planning Department at all relevant periods of time, which is responsible for enforcing the

13

Zoning Ordinance.  (Am. Compl. ¶¶ 8, 13.)  He was not in the Building Inspections/Permits Department, which is responsible for enforcing the Virginia Statewide Building Code and erosion and sediment control ordinances.  (*Id.* ¶ 12).  Accepting these allegations as true at this point, Wendling's entry onto Mendes's property was not authorized by the VESCP regulatory scheme, and, as a result, does not satisfy the requirements of *Burger*.

Aside from Wendling, defendants argue that there are not enough facts alleged to proceed with Mendes's claims against either Petty or Logan.  With respect to Logan, Mendes makes no specific allegations regarding Fourth Amendment violations other than "Planning Department Director, Taryn Logan, never addressed any of Mr. Mendes's concerns raised regarding trespassing." (Am. Compl., ¶ 83).  These claims are conclusory and insufficient.  *See Giarratano*, 521 F.3d at 302 (stating that a court need not "accept the legal conclusions drawn from the facts" or "accept as true facts or unwarranted inferences, unreasonable conclusions, or arguments").  As such, Mendes has not sufficiently plead a constitutional violation under the Fourth Amendment against Logan.

With respect to Petty, Mendes asserts that Petty was copied on the e-mail in August 2019 in which Wendling acknowledged trespassing on Mendes's property.  (Am. Compl. ¶ 115.) Mendes claims that Petty is presumed to have had knowledge that Wendling trespassed and either encouraged him or assisted in covering up that fact.  (*Id.*)  Petty, Mendes alleges, "either knew all along or learned no later than August 2, 2019 that Wendling had illegally searched Mr. Mendes's Property but failed to take any corrective action or bring such information to Mr. Mendes, Mr. Mendes's counsel or the Board of Zoning Appeals while the proceedings were ongoing." (Am. Compl., ¶¶ 37–38.)  Mendes offers specific allegations of Petty's conduct:

> In or about January 2019, Defendant Petty informed Mr. Mendes that he understood that Defendant Wendling's information about the

> Farm was derived from seeing the property from the public right-of-way. As Defendant Petty was carbon copied on the e-mail to Mr. Baker in August 2019 where Defendant Wendling acknowledged trespassing on the Farm, Defendant Petty is presumed to have had knowledge that Defendant Wendling trespassed and either encouraged him or assisted in covering up the fact that Defendant Wendling trespassed.

(Am. Compl. ¶ 115.) Therefore, the question before the court is whether Petty's alleged encouragement or cover-up of Wendling's trespass is sufficient to state a claim for a civil conspiracy to violate Mendes's Fourth Amendment rights.

To establish a civil conspiracy actionable under § 1983, a plaintiff must demonstrate that the defendants "acted jointly in concert and that some overt act was done in furtherance of the conspiracy," resulting in the deprivation of a federal right. *Glassman v. Arlington Cnty., Va.*, 628 F.3d 140, 150 (4th Cir. 2010) (quoting *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996)). A plaintiff must make specific allegations that reasonably lead to the inferences that members of the alleged conspiracy shared the same conspiratorial objective to try to "accomplish a common and unlawful plan" to violate the plaintiff's federal rights. *Hinkle*, 81 F.3d at 421.

Mendes's claims that Petty encouraged the trespass are conclusory and speculative and will be disregarded. *See Simmons v. Poe*, 47 F.3d 1370, 1377 (4th Cir. 1995) (to "avoid evisceration of the purposes of qualified immunity, courts have required that plaintiffs alleging unlawful intent in conspiracy claims under . . . § 1983 plead specific facts in a nonconclusory fashion to survive a motion to dismiss."). Furthermore, the alleged deprivation is Wendling's unlawful trespass onto Mendes's property. According to Mendes' allegations, Petty only learned about the deprivation after it occurred. Therefore, Petty did not conspire with Wendling to trespass on Mendes's property.

**E. Punitive Damages**

Defendants assert that the court should dismiss Mendes's request for punitive damages. Several decisions of this court have held that Fed. R. Civ. P. 12(b)(6) does not provide for dismissal of a portion of relief sought or a specific remedy, but only to dismiss a claim in its entirety.  See *Charles v. Front Royal Volunteer Fire & Rescue Dep't, Inc.*, 21 F. Supp. 3d 620, 629, 631-32 (W.D. Va. 2014) (Urbanski, J.); *Debord v. Grasham*, 2014 WL 3734320, at *1 (W.D. Va. July 28, 2014) (Jones, J.) (agreeing with *Charles* court "that a Rule 12(b)(6) motion is a premature means to attack a request for punitive damages, at least where such damages are theoretically recoverable under the applicable law"); *Downs v. Winchester Med. Ctr.*, 21 F. Supp. 3d 615, 620 (W.D. Va. 2014) (Urbanski, J.) ("the question of punitive damages is not properly addressed on a motion to dismiss"); *Bocock v. Specialized Youth Servs. of Va. Inc.*, No. 5:14-cv-50 (W.D. Va. April 10, 2015) (Dillon, J.) (order denying Rule 12(b)(6) motion to dismiss claim for emotional distress damages).

The above cases are consistent with Rule 8(a), which defines the general rule for pleading and states, "[a] pleading that states a claim for relief must contain" three separate elements: (1) the basis of jurisdiction; "(2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought . . . ." Fed. R. Civ. P. 8(a) (emphasis added).  Thus, under the plain terms of Rule 8(a), a demand for relief is not part of the "statement of the claim," and is only one part of the "claim for relief."  *Id.*; *see also Charles*, 21 F. Supp. 3d at 631 (a "demand for relief is not part of a plaintiff's statement of the claim") (quoting *Alexander v. Se. Wholesale Corp.*, 978 F. Supp. 2d 615, 624, n.7 (E.D. Va. 2013)).  Because Rule 12(b)(6) "may be used only to dismiss a 'claim' in its entirety[,]" *id.* (quoting *Janis v. Nelson*, 2009 WL 4505935, at *7 (D.S.D. Nov. 24, 2009) (citations omitted)), it is not available

16

to dismiss only a demand for relief. Therefore, the court will not dismiss the punitive damages request on this motion.

### III. CONCLUSION

For the above-stated reasons, defendants' motion to dismiss (Dkt. No. 19) will be granted as to Warren County and Mendes's Fourth Amendment claims against defendants Petty and Logan. The motion will be denied in all other respects. The court will enter an appropriate order.

Entered: March 23, 2021.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge